IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ERIC HURST, #06325-122, | CIVIL NO. 22-00171 DKW-RT |
| Plaintiff, | ORDER DISMISSING COMPLAINT IN PART WITH PARTIAL LEAVE TO AMEND |
| v. | |
| ESTELA DERR, *et al.*, | |
| Defendants. | |

Before the Court is a Prisoner Civil Rights Complaint, ECF No. 1, filed by pro se Plaintiff Eric Hurst pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Hurst alleges that three officials[1] at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu") violated his constitutional rights by refusing to provide him with administrative remedy program forms (Count I), threatening his safety (Count II), and denying him adequate medical care (Count III).  ECF No. 1 at PageID #5–10.  For the following reasons, the Court DISMISSES the Complaint in part pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), albeit with partial leave to amend.

---

[1]Hurst names as Defendants Warden Estela Derr, Unit Manager Kris Robl, and Nurse Dayton. ECF No. 1 at PageID # 1–2.

# I. <u>STATUTORY SCREENING</u>

The Court is required to screen all in forma pauperis prisoner pleadings against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d

at 1130.  When a claim cannot be saved by amendment, dismissal with prejudice is appropriate.  *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  __BACKGROUND__[2]

Hurst commenced this suit on April 12, 2022.  ECF No. 1 at PageID # 11. He alleges in Count I that Robl violated his right to access the court under the First Amendment by refusing to provide him with administrative remedy program forms.  *Id.* at PageID # 5–6.  According to Hurst, Robl's actions "delayed" his access to the court, apparently in connection with this suit.  *Id.* at PageID # 5.

Hurst alleges in Count II that Warden Derr and Robl violated the Eighth Amendment's prohibition against cruel and unusual punishment by failing to protect him from harm.  *Id.* at PageID # 7–9.  Hurst was housed at FDC Honolulu in "unit 5A" with "gang members . . ., pretrial inmates, presentence inmates[,] and sentenced . . . inmates."  *Id.* at PageID # 7.  On July 12, 2021, a "gang riot" involving more than thirty inmates broke out in unit 5A following a gambling dispute.  *Id.* at PageID # 7–8.  During the disturbance, three gang members attacked Hurst, with one of them wielding a "lock in a sock."  *Id.* at PageID # 8. The on-duty officer and ten additional officers responded to the disturbance and

---

[2]At screening, Hurst's well-pleaded factual allegations are accepted as true.  *See, e.g.*, *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

stopped the fighting. *Id.* The inmates involved in the disturbance were moved to the special housing unit the next day. *Id.* These inmates eventually returned to unit 5A. *Id.*

Hurst alleges in Count III that Nurse Dayton violated the Eighth Amendment by denying him adequate medical care after the disturbance. *Id.* at PageID # 10. As a result of being "severely beaten" by the three gang members, Hurst "suffered head trauma" and "numerous injuries all over his body." *Id.* at PageID # 9. Hurst met with Dayton, told him about his "severe head pain," and showed Dayton the "obvious head and body injuries." *Id.* at PageID # 8. According to Hurst, his injuries were "documented," but he "was not offered medical treatment." *Id.* X-rays were not taken, and Hurst was not evaluated for a concussion. *Id.* Hurst continues to experience "headaches and dizziness" because of his injuries. *Id.* at PageID # 10.

Hurst seeks $3,000,000 for "jeopardizing [his] safety and depriving medical attention." *Id.* at PageID # 11.

## III.  DISCUSSION

### A.  Legal Framework for *Bivens* Claims

In *Bivens*, the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (per

curiam) (internal quotation marks and citation omitted). *Bivens* involved a suit against individual federal agents who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. 403 U.S. at 389–90. Since *Bivens*, the Supreme Court has expanded this implied cause of action twice. *See Davis v. Passman*, 442 U.S. 228 (1979) (suit under the Fifth Amendment's Due Process Clause for gender discrimination by a United States Congressman); *Carlson v. Green*, 446 U.S. 14 (1980) (suit under the Eighth Amendment's Cruel and Unusual Punishment Clause for failure to provide adequate medical treatment by federal prison officials). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (quoting *Iqbal*, 556 U.S. at 675). "This is in accord with the Court's observation that it has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"[3] *Abbasi*,

---

[3]The Court declined to create a *Bivens* remedy in the following cases: a First Amendment suit against a federal employer, *Bush v. Lucas*, 462 U.S. 367, 390 (1983); a race-discrimination suit against military officers, *Chappell v. Wallace*, 462 U.S. 296, 297 (1983); a substantive due process suit against military officers, *United States v. Stanley*, 483 U.S. 669, 671–72 (1987); a procedural due process suit against Social Security officials, *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988); a procedural due process suit against a federal agency for wrongful termination, *FDIC v. Meyer*, 510 U.S. 471, 473–74 (1994); an Eighth Amendment suit against a private prison operator, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001); a due process suit against officials from the Bureau of Land Management, *Wilkie v. Robbins*, 551 U.S. 537, 547–548, 562 (2007); an Eighth Amendment suit against prison guards at a private prison, *Minneci v. Pollard*,

137 S. Ct. at 1857 (quoting *Malesko*, 534 U.S. at 68).  Indeed, the Court has

suggested that "the analysis in [its] three *Bivens* cases might have been different if

they were decided today."  *Abbasi*, 137 S. Ct. at 1856.

In deciding whether a *Bivens* remedy is available, courts first consider

whether providing such a remedy is precluded by prior cases in which the Supreme

Court or the Ninth Circuit has declined to recognize an implied right of action.

*Lanuza v. Love*, 899 F.3d 1019, 1025 (9th Cir. 2018).  If a claim is precluded, that

is the end of the matter.  If a claim is not precluded, the Court then applies a

two-step test.

At step one, the Court determines whether the plaintiff is seeking a *Bivens*

remedy in a new context.  *Ioane v. Hodges*, 939 F.3d 945, 951 (9th Cir. 2018).  "A

new *Bivens* context is defined broadly."  *Hoffman v. Preston*, 26 F.4th 1059, 1064

(9th Cir. 2022).  The context is new "[i]f the case is different in a meaningful way

from previous *Bivens* cases decided by [the Supreme Court]."  *Abbasi*, 137 S. Ct.

at 1859.  If the plaintiff is seeking a *Bivens* remedy in a new context, then the court

proceeds to the second step.

At step two, the Court may extend *Bivens* only if two conditions are met.

"First, the plaintiff must not have any other adequate alternative remedy."  *Ioane*,

---

565 U.S. 118, 120 (2012); and a Fifth Amendment suit against Department of Justice officials,
*Abbasi*, 137 S. Ct. at 1860–63.

939 F.3d at 951.  "Second, there cannot be any 'special factors' that lead [the Court] to believe that Congress, instead of the courts, should be the one to authorize a suit for money damages."  *Id.* at 951–52 (internal quotation marks omitted).  Although the Supreme Court has yet to define the term, "special factors," it has explained that "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Abbasi*, 137 S. Ct. at 1857–58.

## B.  Official Capacity Claims Under *Bivens*

Hurst names Warden Derr, Robl, and Dayton in both their individual and official capacities.  *See* ECF No. 1 at PageID # 1–2.

"[A] *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity."  *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) (quotation marks and citation omitted) (brackets in original).  "This is because a *Bivens* suit against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity."  *Id.*  Thus, "[t]here is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official

7

capacity." *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016) (quotation marks and citation omitted).

Any *Bivens* claims against Warden Derr, Robl, ant Dayton in their official capacities are therefore DISMISSED with prejudice.

## C. Supervisory liability

Hurst names as Defendants two supervisory officials at FDC Honolulu—that is, the warden and a unit manager.  ECF No. 1 at PageID # 1–2.

"In the limited settings where *Bivens* does apply . . . Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Iqbal*, 556 U.S. at 676.  This is because "[t]he purpose of *Bivens* is to deter the *officer*."  *Abbasi*, 137 S. Ct. at 1860 (quotation marks and citation omitted).   "*Bivens* is not designed to hold officers responsible for acts of their subordinates."  *Id.*

A *Bivens* claim, therefore, must be "brought against the individual official for his or her own acts, not the acts of others."  *Id.*; *see also Jones v. McFadden*, No. 1:09–cv–00957–DLB (PC), 2010 WL 2196849, at *3 (E.D. Cal. May 28, 2010) ("[W]hen a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.").  Thus, to state a claim for relief under *Bivens* based on a theory of supervisory liability, the plaintiff must allege facts showing that supervisory

defendants:  (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.  *Id.* (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

Any claims against Warden Derr and Robl solely based on their supervisory positions are DISMISSED with prejudice.  *See Fries v. Kernan*, 2018 WL 11260954, at *8 (E.D. Cal. Dec. 5, 2018) ("[A]ny allegation that supervisory personnel [are] . . . somehow liable solely based on the acts of those under his or her supervision, does not state a cognizable claim.").  For a claim against Warden Derr or Robl to proceed, Hurst must plausibly allege that each one of them violated his rights through their own actions.  *See Chavez v. United States*, 683 F.3d 1102, 1109 (9th Cir. 2012) ("*Bivens* claims cannot proceed on a theory of *respondeat superior*, but must instead plead that a supervisor, by her 'own individual actions,' violated the Constitution." (citation omitted)).

## D.  First Amendment

Hurst alleges in Count I that Robl violated his First Amendment right to access the court by refusing to provide him with administrative remedy program forms.  *Id.* at PageID # 5–6.

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities and as well as a right of meaningful access to the courts." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015).  The Supreme Court, however, has not recognized a *Bivens* remedy for First Amendment claims, *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012); *Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018), and the Ninth Circuit has declined to extend *Bivens* to access-to-court claims, *Schwarz v. Meinberg*, 761 F. App'x 732, 733–34 (9th Cir. 2019) ("We decline to extend *Bivens* remedies to [the plaintiff's] claims— unsanitary cell conditions, access to courts, and request for placement in a camp facility—because these claims do not fall within claims authorized by the Supreme Court.").

District courts, therefore, have consistently concluded that no *Bivens* remedy exists for access-to-court claims.  *See, e.g.*, *Camillo-Amisan v. Fed. Bureau of Prisons*, 2019 WL 8138040, at *5 (C.D. Cal. Oct. 4, 2019) ("The Court declines to find a private right of action for Plaintiff's denial of access to courts claim under *Bivens*."), *report and recommendation adopted sub nom. Camillo-Amisano v. Fed. Bureau of Prisons*, 2019 WL 8137708 (C.D. Cal. Nov. 12, 2019); *Moore v. United States*, 2020 WL 3265874, at *4 (E.D. Cal. June 17, 2020) ("[T]he Court . . . declines to find an implied *Bivens* cause of action under the First Amendment for the denial of access to the courts."), *report and recommendation adopted*, 2020

WL 6060869 (E.D. Cal. Oct. 14, 2020).  Given the Ninth Circuit's conclusion that *Bivens* does not extend to access-to-court claims, Hurst's claim in Count I cannot proceed.  *See Lanuza*, 899 F.3d at 1025 (noting that courts must first consider whether providing a *Bivens* remedy is precluded by prior Ninth Circuit decisions).

Even if a *Bivens* remedy did exist, Hurst fails to state a claim.  "To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury."  *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing *Lewis v. Casey*, 518 U.S. 341, 349 (1996)).  "Actual injury is a jurisdictional requirement that flows from the standing doctrine and may not be waived."  *Greene*, 48 F.3d at 1018.  "It is actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim."  *Id.* (internal quotation marks and citation omitted).

Here, Hurst alleges that Robl only "delayed" his access to the court.  ECF No. 1 at PageID # 5.  Hurst does not allege that he suffered *actual* injury because of Robl's actions.  Nor could he.  Although Robl's purported actions might have impeded Hurst's access to the BOP's administrative remedy program and prevented Hurst from exhausting his administrative remedies, Hurst successfully filed his Complaint in court.  Because Hurst has not suffered any actual injury, he cannot state an access-to-court claim.  *See Kerch v. Johnson*, 2018 WL 844416, at *2 n.4 (M.D. Ga. Feb. 13, 2018) ("[B]ecause the alleged interference with the

11

grievance procedure did not prevent the Plaintiff from bringing suit in court, he has suffered no actual injury."); *Jose-Nicolas v. Butler*, 2016 WL 2643347 (S.D. Ill. May 10, 2016) (dismissing access-to-court claim where the plaintiff "was not prevented from filing [an] action in a timely manner, and he describe[d] no actual legal detriment that he suffered as a result of [the defendant's] conduct").

The Court concludes that granting leave to amend would be futile because the flaws in Count I cannot be cured by amendment. Hurst's access-to-court claim in Count I against Robl is therefore DISMISSED with prejudice.

## E. Eighth Amendment

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments." U.S. Const. amend. VIII; *see Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021). Although the Constitution "'does not mandate comfortable prisons,'" it does not "permit inhumane ones[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). Prison officials, therefore, may not use excessive physical force against prisoners, they "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and [they] must 'take reasonable measures to guarantee the safety of the inmates[.]'" *Id.* (citations omitted).

## 1.  Threat to Safety

Hurst alleges in Count II that Warden Derr and Robl threatened his safety by housing "gang members . . ., pretrial inmates, presentence inmates[,] and sentenced . . . inmates" together, and allowing inmates to gamble.  *Id.* at PageID # 7.

The Supreme Court has not explicitly held that a *Bivens* remedy is available under the Eighth Amendment for a threat-to-safety claim.  The Ninth Circuit, however, has allowed a *Bivens* claim under the Eighth Amendment for a federal prison official's deliberate indifference to prisoner safety.  *See Doreh v. Rodriguez*, 723 F. App'x 530, 530 (9th Cir. 2018) ("[T]hese allegations are sufficient to state a deliberate indifference to safety claim.").  Several district courts have also recognized failure-to-protect claims under *Bivens*.  *See McDaniels v. United States*, No. 5:14-cv-02594-VBF-JDE, 2018 WL 7501292, at *5–6 (C.D. Cal. Dec. 28, 2018), *report and recommendation adopted*, 2019 WL 1045132 (C.D. Cal. Mar. 5, 2019); *Lee v. Matevousian*, No. 1:18-cv-00169-GSA-PC, 2018 WL 5603593, at *7–8 (E.D. Cal. Oct. 26, 2018); *Marquez v. United States*, Case No.: 3:18-cv-0434-CAB-NLS, 2018 WL 1942418, at *4 (S.D. Cal. Apr. 25, 2018).

Assuming the existence of a *Bivens* remedy, however, Hurst fails to state a plausible claim.  *See Hernandez*, 137 S. Ct. at 2007 ("[D]isposing of a *Bivens* claim by resolving the constitutional question, while assuming the existence of a

13

*Bivens* remedy—is appropriate in many cases."); *Ansari v. Martinez*, 859 F. App'x 842, 842 (9th Cir. 2021) ("The district court properly dismissed [the plaintiff's] Eighth Amendment claims because, even if a *Bivens* remedy is available for these claims, [the plaintiff] failed to allege facts sufficient to state a plausible claim.").

Prison officials "have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (quotation marks and citation omitted) (ellipsis in original). A prison official violates the Eighth Amendment when two requirements are met. "First, the deprivation must be objectively, sufficiently serious[.]" *Id.* at 834. "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* Second, the plaintiff must show deliberate indifference— that is, that "the [prison] official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Here, Hurst has not plausibly alleged that he faced a "substantial risk of serious harm" prior to the July 12, 2021 disturbance. *Farmer*, 511 U.S. at 834. Although prison officials housed various groups together in unit 5A, nothing suggests that doing so posed a substantial risk of serious harm. For example, Hurst does not allege that there were any issues between the various groups housed in

unit 5A prior to July 12.  Likewise, Hurst has not plausibly alleged a substantial risk of serious harm because of the gambling between inmates in unit 5A.  To the extent Hurst notes that different gangs were housed together in unit 5A, this does not necessarily amount to an Eighth Amendment violation.  *See Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) ("[A]mong other problems, '[t]he number of gang members housed . . . and the high representation of certain gangs would place an unmanageable burden on prison administrators were they required to separate inmates by gangs.'" (quoting *Mayoral v. Sheahan*, 245 F.3d 934, 939 (7th Cir. 2001) (second alteration in original)); *Wilson v. Pierce Cnty.*, Case No. 16-5455 RJB, 2017 WL 3876625 (W.D. Wash. Sept. 5, 2017) ("The Ninth Circuit has held that a jail's policy of housing rival gang members together does not amount to a per se violation of the Eighth Amendment.").

Hurst also has not plausibly alleged that any Defendant acted with deliberate indifference to his safety prior to July 12, 2021.  Hurst does not say, for instance, whether or how any prison official knew of a substantial risk of serious harm and disregarded that risk.  Hurst does not allege that anyone complained to Warden Derr or Robl about the composition of the inmate population in unit 5A prior to July 12, nor does he allege that any inmate voiced concern about the gambling that was taking place in the unit.  In short, Hurst has not plausibly alleged that Warden Derr or Robl knew of and disregarded an excessive risk to his safety.  *See M.G. v.*

*United States*, 603 F. App'x 616, 617 (9th Cir. 2015) ("To plead deliberate indifference, [the plaintiff] must allege nonconclusory facts from which we can infer defendants . . . actually knew of the danger [the plaintiff] faced.").  Count II is therefore DISMISSED with leave to amend.

### 2.  Medical Care

Hurst alleges in Count III that Nurse Dayton denied him adequate medical care immediately after the July 12, 2021 disturbance.  ECF No. 1 at PageID # 5–6.

As already noted, "*Carlson* recognized an implied claim under the Eighth Amendment's cruel and unusual punishment clause for prison officials' failure to provide adequate medical care[.]" *Hoffman v. Preston*, 26 F.4th 1059, 1064 (9th Cir. 2022) (citation omitted).  "To establish a claim of inadequate medical care, a prisoner must first show a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (per curiam) (internal quotation marks omitted).  "If . . . a prisoner establishes a sufficiently serious medical need, that prisoner must then show the official's response to the need was deliberately indifferent." *Id.* at 786 (internal quotation marks and brackets omitted).  "To show deliberate indifference, the plaintiff must show that the course of treatment the official chose was medically unacceptable under the circumstances and that the official chose this

course in conscious disregard of an excessive risk to the plaintiff's health." *Id.*
(internal quotation marks and brackets omitted).  "Deliberate indifference is a
'high legal standard' beyond malpractice or gross negligence." *Balla v. Idaho*, 29
F.4th 1019, 1025–26 (9th Cir. 2022) (citation omitted).

     After being "severely beaten" by the three gang members, one of whom used
a "lock in a sock," Hurst "suffered head trauma" and "numerous injuries all over
his body."  ECF No. 1 at PageID # 9.  Hurst met with Dayton, told him about his
"severe head pain," and showed Dayton the "obvious head and body injuries." *Id.*
at PageID # 8.  While Hurst's injuries were "documented," he "was not offered
medical treatment." *Id.*  X-rays were not taken, and Hurst was not evaluated for a
concussion. *Id.*  Hurst continues to experience "headaches and dizziness" because
of his injuries. *Id.* at PageID # 10.  Liberally construed, Hurst states a plausible
denial-of-adequate-medical-care claim in Count III against Dayton.

## IV.  CONCLUSION

     (1)  Hurst's access-to-court claim in Count I against Robl is DISMISSED
with prejudice.

     (2)  Hurst states a denial-of-adequate-medical-care claim in Count III against
Nurse Dayton that may proceed.

     (3)  Hurst's threat-to-safety claim in Count II against Warden Derr and Robl
is DISMISSED with leave to amend.  Hurst may file an amended pleading that

attempts to cure the noted deficiencies in this claim, if possible, on or before **May 31, 2022.**

(4)  If he chooses to file an amended pleading, Hurst must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.4, which require an amended complaint to be complete itself, without reference to any prior pleading.  An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form.  An amended complaint will supersede the preceding complaint.  Claims not realleged in an amended complaint may be deemed voluntarily dismissed.

(5)  IN THE ALTERNATIVE, Hurst may notify the Court in writing on or before **May 31, 2022** that he elects to proceed with only his denial-of-adequate-medical-care claim in Count III against Nurse Dayton, and this claim shall be served.  If Hurst fails to timely file either an amended pleading or a notice of election, the Court will direct that the Complaint be served as limited by this Order.

(6)  The Clerk is DIRECTED to send Hurst a prisoner civil rights complaint form so that he may comply with the directions of this Order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED: May 6, 2022 at Honolulu, Hawaii.



Derrick K. Watson
United States District Judge

---

*Hurst v. Derr, et al.*; Civil No. 22-00171 DKW-RT; **ORDER DISMISSING COMPLAINT IN PART WITH PARTIAL LEAVE GRANTED TO AMEND**