IIN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ERIC HURST,<br><br>      Plaintiff,<br><br>vs.<br><br>EARL DAYTON, Individually; *et al.*,<br><br>      Defendants. | Case No. 22-cv-00171-DKW-RT<br><br>**ORDER GRANTING DEFENDANT DAYTON'S MOTION TO DISMISS** |

      Plaintiff Eric Hurst, a federal prisoner at FDC Honolulu, seeks damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 (1971), alleging that Defendant Nurse Earl Dayton denied him adequate medical care in violation of the Eighth Amendment's Cruel and Unusual Punishment Clause by failing to appropriately treat Hurst's injuries following a gang riot in his unit. Complaint, Dkt. No. 1. Before the Court is Dayton's motion to dismiss ("MTD"), Dkt. No. 26. Dayton contends that Hurst's claim is not cognizable under *Bivens*, principally relying on the recent Supreme Court decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022).

      As explained more fully below, Dayton is correct. Although Hurst's claim might have had a fighting chance pre-*Egbert*, that 2022 decision tightened the noose around *Bivens* and clarified that courts should recognize an implied

constitutional damages right of action only in the most unusual of circumstances—a standard not met here. *See Egbert*, 142 S. Ct. at 1803. The MTD is GRANTED.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" are insufficient. *Id*. at 679. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555) (explaining that "legal conclusions" are not accepted as true).

## **RELEVANT BACKGROUND**

On June 12, 2021, Hurst was incarcerated at FDC Honolulu. Complaint at 7. While he was watching television, a "gang riot" involving thirty inmates broke out. *Id.* Hurst was "severely" beaten, suffering "head trauma" and "numerous injuries all over his body." *Id.* at 7–8.

After the incident, Nurse Dayton examined Hurst. *Id.* at 2, 7; Dkt. No. 26-3 (Hurst's medical records). Hurst described his "severe" pain as at a level 5 out of 10 and showed Dayton his "obvious head and body injuries." Complaint at 8; Dkt. No. 26-3. Dayton documented his findings, Complaint at 8, noting that Hurst had bruising on his left cheekbone, a laceration on the inside of his upper lip without active bleeding, an abrasion or contusion on his scalp, post-epistaxis to his left nostril, and abrasions to his upper back and right knee. Dkt. No. 26-3 at 3. Dayton also noted that Hurst did not suffer any broken bones, dislocated joints, muscle tears, or any other illnesses or injuries requiring special care. *Id.* Finally, Dayton stated that Hurst should subsequently "be evaluated by [his] provider," and he provided Hurst with "[c]ounseling" and a handout on "access to care," after which Hurst "verbalize[d] understanding." *Id.* Despite this examination and these notations, Hurst alleges he "was not offered medical attention by FDC Honolulu for his injuries"—he "received no X-rays" and was not "tested for a concussion."

Complaint at 2, 7–8.  Hurst alleges that he "continues to suffer from the injuries he sustained" during the brawl, including "headaches and dizziness."  *Id.* at 10.

On April 15, 2022, Hurst filed a Complaint[1] against Dayton in his individual capacity[2], alleging that Dayton failed to provide adequate medical care in violation of the Eighth Amendment.  Complaint at 5–11.  On January 13, 2023, Dayton filed the instant MTD, claiming (1) that Hurst has no viable *Bivens* claim, *see* Dkt. No. 26-1 at 4–17, and, alternatively, (2) that Dayton is entitled to qualified immunity.[3]  *See id.* at 17–22.  Hurst did not oppose the MTD, and no reply brief was filed.  The Court has elected to decide this matter without a hearing pursuant to Local Rule 7.1(c), *see* Dkt. No. 29, and this Order follows.

## DISCUSSION[4]

### I.  *Bivens* Legal Framework

In *Bivens*, the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights."  *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (per curiam) (internal quotation marks and citation omitted).  *Bivens* allowed a plaintiff

---

[1]Hurst's application for *in forma pauperis* status was granted on April 19, 2022.  Dkt. Nos. 2–3.
[2]This Court previously dismissed Hurst's two additional claims against two other Defendants, along with his official capacity claim against Dayton.  Dkt. No. 6 (performing the required screening of the Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A(a)).
[3]In light of the Court's *Bivens* findings, qualified immunity is not further addressed herein.
[4]As Hurst is *pro se*, the Court has liberally construed his pleadings.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

to sue individual federal agents for allegedly violating a Fourth Amendment right to be free from unreasonable searches and seizures. 403 U.S. at 389–90.

The Supreme Court has since severely restricted the *Bivens* doctrine. In fact, the Court has recognized the implied cause of action in other contexts only twice— once in *Davis v. Passman*, 442 U.S. 228 (1979), in which a U.S. Congressman was alleged to have discriminated against a staff member on the basis of her sex, in violation of the Fifth Amendment's Due Process Clause, and once in *Carlson v. Green*, 446 U.S. 14 (1980), in which federal prison officials were alleged to have failed to treat a prisoner's severe asthma, in violation of the Eighth Amendment's Cruel and Unusual Punishment Clause. "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court" has placed its stamp of approval on a *Bivens* damages remedy, and the Court has "made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 532 U.S. 120, 131, 135 (2017) (quoting *Iqbal*, 556 U.S. at 675); *Hernandez*, 140 S. Ct. at 743 (relying on separation-of-powers principles and the "risk of interfering with the authority of the other branches" in refusing to expand *Bivens* further).[5]   Indeed, the Court has gone so far as to state that the outcome of

---

[5]The Supreme Court has refused to extend *Bivens* to any new category of cases since *Carlson*. *See, e.g.*, *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (First Amendment suit against a federal employer); *Chappell v. Wallace*, 462 U.S. 296, 297 (1983) (race-discrimination suit against military officers); *United States v. Stanley*, 483 U.S. 669, 671–72 (1987) (substantive due process suit against military officers); *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988) (procedural due process suit against Social Security officials); *FDIC v. Meyer*, 510 U.S. 471,

5

the *Bivens* trio of cases "might have been different if they were decided today." *Id.* at 134.

In 2017, in *Ziglar v. Abbasi*, 532 U.S. at 134–35, the Supreme Court articulated a two-part test for determining whether a *Bivens* remedy is available. *See Hernandez*, 140 S. Ct. 735, 743 (citing *Malesko*, 534 U.S. at 68 and *Ziglar*, 582 U.S. at 139); *Ioane v. Hodges*, 939 F.3d 945, 951 (9th Cir. 2018). At step one, the deciding court must "first inquire whether the request involves a claim that arises in a 'new context.'" *Id.* A case presents a new context if it "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]"— from *Bivens*, *Davis*, and *Carlson*. *See Ziglar*, 532 U.S. at 139. To help courts determine whether a case differs in a meaningful way from one of the *Bivens* trio, *Ziglar* offers the following non-exhaustive list of factors:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

---

473–74 (1994) (procedural due process suit against a federal agency for wrongful termination); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001) (Eighth Amendment suit against a private prison operator); *Wilkie v. Robbins*, 551 U.S. 537, 547–548, 562 (2007) (due process suit against officials from the Bureau of Land Management); *Minneci v. Pollard*, 565 U.S. 118, 120 (2012) (Eighth Amendment suit against prison guards at a private prison); *Ziglar*, 532 U.S. at 134–35 (Fifth Amendment suit against Department of Justice officials); *see also ibid.* at 135 (collecting the preceding cases).

*Ziglar*, 582 U.S. at 139–40. If, after considering these factors, the case does *not* differ in any meaningful way from the *Bivens* trio of cases, the context is not "new," and the claim is cognizable.

Where the case *does* present a "new context," the deciding court proceeds to step two and considers (1) whether the plaintiff has any other alternative remedy for his injury and (2) whether there are any "special factors" that might lead the court to believe that Congress, instead of the Judiciary, is better suited to "weigh the costs and benefits" and authorize a right of action for damages. *Id.* at 136, 138, 149. If the answer to either question is "Yes," then *Bivens* cannot be extended to the new context.[6]

*Egbert* modified *Ziglar*'s framework in two principal ways.[7] First, *Egbert* clarified the rigor with which courts should perform the special factors analysis.

---

[6]Post-*Ziglar* (and pre-*Egbert*), some courts have found that various BOP-based medical indifference claims did *not* present "new contexts" while others have found the converse to be true. *Compare, e.g.*, *Hunt v. Matevousian*, 336 F. Supp. 3d 1159, 1169–70 (E.D. Cal. June 15, 2018) (finding no new context where prison staff delayed providing necessary X-ray to a prisoner); *Lewis v. Ives*, 2020 WL 2761024 at *4 (D. Or. Feb. 12, 2020) (finding no new context where prison officials denied prisoner adequate medical care for gender dysphoria and gender confirmation surgery); *Crespo v. Hurwitz*, 2020 WL 7249591 at *8 (E.D.N.Y. May 17, 2020) (finding no new context for three prisoners' claims of deficient medical care), *with, e.g.*, *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 65 (E.D.N.Y. 2017); *Martinez v. U.S. Bur. of Prisons*, 2019 WL 5432052 (C.D. Cal. Aug. 20, 2019); *Manzo v. Mateware*, 2021 WL 6284098 (N.D. Tex. Dec. 13, 2021).

[7]*Egbert* decided that a plaintiff's claim arose in a new context, despite its very close factual and legal similarities to *Bivens* itself. *See* 142 S.Ct. at 1810 (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself."); *ibid.* at 1815 (Sotomayor, J., concurring in the judgment in part and dissenting in part) ("At bottom, [the respondent's] claim is materially indistinguishable from the claim brought in *Bivens*.").

*See* 142 S. Ct. at 1802–03 ("[C]reating a cause of action is a legislative endeavor. . . . Unsurprisingly, Congress is 'far more competent than the Judiciary' to weigh such policy considerations."); *see also ibid.* at 1809 (Gorsuch, J., concurring in the judgment) ("When might a court *ever* be 'better equipped' than the people's elected representatives to weigh the 'costs and benefits' of creating a cause of action?"); *Mejia v. Miller*, 2023 WL 23560630 (9th Cir. 2023) ("Under *Egbert*, rarely *if ever* is the Judiciary equally suited as Congress to extend *Bivens* even modestly.") (emphasis added).  And second, *Egbert* instructed that the second-step analysis should occur in *every case*, not only those whose circumstances were otherwise meaningfully different from one of the *Bivens* trio:

> *While our cases describe two steps, those steps often resolve to a single question*: whether there is any reason to think that Congress might be better equipped to create a damages remedy.
>
> . . .
>
> *[A] court faces only one question*: whether there is any rational reason (even one) to think that Congress is better suited to weigh the costs and benefits of allowing a damages action to proceed. . . . [U]nder the proper approach, a court must ask more broadly if there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate.  If so, or even if there is the *potential* for such consequences, a court cannot afford a plaintiff a *Bivens* remedy. . . . [Moreover, s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy. . . .
>
> Even assuming factual parallels, [the *Bivens* trio of cases] carr[y] little weight because [they] predate[] the Court's current approach to

> implied causes of action. A plaintiff cannot justify a *Bivens* extension based on parallel circumstances with *Bivens*, *Passman*, or *Carlson* . . . unless the plaintiff also satisfies the prevailing analytical framework prescribed by the last four decades of intervening case law.

*Id.* at 1805–07, 1809 (quotation marks and citations omitted; emphasis added).

In short, while *Egbert* did not explicitly overrule *Bivens,* the writing is on the wall. Moving forward, the two-step *Ziglar* inquiry effectively presents a single question—"whether there is any reason to think that Congress might be better equipped to create a damages remedy"—with the Supreme Court, at the same time, providing an answer to its own question: in virtually every case, yes.[8]

## II. Application to the Instant Case

Hurst asserts that, while he was incarcerated at FDC Honolulu, Nurse Dayton failed to adequately treat his injuries following a gang riot, exacerbating his injuries. Of the *Bivens* trio, the most factually analogous is *Carlson*. There, the Supreme Court recognized a *Bivens* cause of action where federal prison officials

---

[8]Numerous courts similarly understand *Egbert* as having worked drastic changes to *Ziglar*'s framework by reducing the analysis to a single question. *See, e.g.*, *Mejia*, 2023 WL 2350630 at *4 (highlighting *Egbert*'s guidance that "the two-step analysis 'often resolves to a single question'"); *Hoffman v. Preston*, 2022 WL 6685254 at *1 (9th Cir. Oct. 11, 2022) (unpublished disposition) (relying on *Egbert*'s guidance that courts now "face[] only one question: whether there is any rational reason (even one)" to decline to imply a *Bivens* remedy, including the availability of an alternative remedy); *Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022) (concluding that "courts may [now] dispose of *Bivens* claims for 'two independent reasons:'" that Congress is better positioned to create a remedy, or that an alternative remedy is available); *Waters v. Brown*, 2023 WL 2325545 at *4 (N.D.W.V. Feb. 21, 2023) ("Based upon [*Egbert*], th[e c]ourt believes the *Bivens* type of action is no longer viable, whether a new context or not."); *Washington v. Fed. Bur. of Prisons*, 2022 WL 3701577 (D.S.C. Aug. 26, 2022) ("A *Bivens* remedy will be unavailable 'in most every case.'").

failed to provide adequate medical care to a prisoner with a chronic asthmatic condition. 446 U.S. at 16 n.1, 24; *Green v. Carlson*, 581 F.2d 669, 671 (7th Cir. 1978), *aff'd by ibid.*[9] Against the advice of doctors, the officials held the prisoner in a facility that they knew was grossly inadequate to care for his asthma needs. 446 U.S. at 16 n.1. They then "failed to give him competent medical attention for eight hours after an asthmatic attack, administered contraindicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital." *Id.* As a result, the prisoner suffered injuries and died, with the prisoner's mother bringing a *Bivens* suit on behalf of his estate. *Id.* at 16.

Hurst, in other words, presents with multiple factual differences as compared to *Carlson*. For example, the medical conditions of which Hurst complains were brought on by an acute prison riot, rather than by a chronic asthmatic condition of which the BOP was aware upon incarceration. Also, while Hurst may have been injured, the severity of his injuries have not proven to be fatal. Finally, a violation of the standard of care was evident in *Carlson*, whereas it is unclear whether even negligence is in play with respect to Hurst.

---

[9]*Carlson* relied on the constitutional right articulated in *Estelle v. Gamble*, 429 U.S. 97 (1976), that the Eighth Amendment precludes prison officials from inflicting unnecessary suffering on a prisoner by failing to treat the prisoner's medical needs.

Similarities between *Carlson* and Hurst are also apparent. In particular, just as in *Carlson*, Hurst is a prisoner claiming a federal prison official with medical training was deliberately indifferent to his obvious medical needs, resulting in further, unnecessary, injury, all in violation of the Eighth Amendment. Prior to *Egbert*, this Court may have very well joined the many other courts finding that comparable allegations presented the same context as in *Carlson*. *See supra* at 7 n.6 (detailing cases finding no new context in similar circumstances).

The landscape, however, has changed. *Egbert*, 142 S. Ct. at 1809 ("A plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances' with *Bivens*, *Passman*, or *Carlson* . . . unless the plaintiff also satisfies the prevailing 'analytical framework' prescribed by the last four decades of intervening case law."); *ibid.* at 1808 ("Even assuming the factual parallels are as close as [the plaintiff] claims, [prior *Bivens* cases] carr[y] little weight" because they "predate[] our current approach to implied causes of action.").

*Egbert* commands consideration of whether alternative remedies are available. 142 S. Ct. at 1807. Here, they are. *See* 28 C.F.R. § 542.10(a) ("The purpose of the [BOP] Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."); *see also Malesko*, 534 U.S. at 74 ("Inmates have full access to remedial mechanisms established by the BOP, including . . . grievances filed

through the BOP's Administrative Remedy Program."); *Schwarz v. Meinberg*, 761 F. App'x 732, 734–35 (9th Cir. 2019) (identifying the Federal Tort Claims Act ("FTCA") as an alternative process available to federal prisoners); *Prescott*, 2022 WL 18859316, at *2 ("[A]ggrieved federal prisoners can bring suit for damages against the United States for the torts of its federal employees under the [FTCA]."); *Donaldson*, 2022 WL 10189084, at *3 ("[P]laintiff has alternative remedies available to him, including the [BOP] administrative grievance process and a federal tort claims action."). The Supreme Court, moreover, has advised that "it does not matter that 'existing remedies do not provide complete relief'" or are otherwise inadequate. *Egbert*, 142 S. Ct. at 1804. Instead, "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 1807.

*Egbert* also commands consideration of which branch is better suited to fashion a remedy for a plaintiff like Hurst. 142 S. Ct. at 1807. Here, as the Supreme Court has foreshadowed, there is no doubt that the *legislature* is that branch. *See id.* at 1802–03 ("[C]reating a cause of action is a legislative endeavor. . . . Unsurprisingly, Congress is far more competent than the Judiciary to weigh such policy considerations.") (internal quotation marks and citation omitted); *ibid.* 1803 (stating that "in most every case" provision of damages remedies should be

12

left to legislators); *ibid.* at 1809 (Gorsuch, J., concurring in the judgment) ("When might a court *ever* be 'better equipped' than the people's elected representatives to weigh the 'costs and benefits' of creating a cause of action?"); *Mejia v. Miller*, 2023 WL 23560630 (9th Cir. 2023) (Under *Egbert*, rarely *if ever* is the Judiciary equally suited as Congress to extend *Bivens* even modestly.") (emphasis added).

Both of these factors render Hurst's case a "new context" not contemplated by *Carlson*. *See Egbert*, 142 S. Ct. at 1803 ("'Even a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy.'") (citation omitted). Because they do, no *Bivens* action may lie.

## CONCLUSION

Hurst brings his claim in an era that considers implied constitutional remedies with extreme disfavor. Therefore, for the reasons stated herein, Dayton's MTD, Dkt. No. 26, is GRANTED. Moreover, because "it is absolutely clear that no amendment can cure the defect," this action is DISMISSED WITH PREJUDICE. *See Lucas v. Dep't of Corrs.*, 66 F.3d 245, 248 (9th Cir. 1995).

IT IS SO ORDERED.
Dated: March 15, 2023 at Honolulu, Hawaiʻi.



_____
Derrick K. Watson
Chief United States District Judge

*Eric Hurst vs. Earl Dayton, et al*; Civil No. 22-00171 DKW-RT; **ORDER GRANTING DEFENDANT DAYTON'S MOTION TO DISMISS**

13